IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRIS KALB on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) No.: __21-cv-1092__<br>) |
| v. | ) Removed from the Circuit Court of<br>) McLean County, Illinois, Eleventh<br>) Judicial Circuit, No. 2021L0000014 |
| GARDAWORLD CASHLINK LLC, | )<br>) |
| Defendant. | ) |

## NOTICE OF REMOVAL

Defendant GardaWorld CashLink LLC ("CashLink") and Garda CL Great Lakes, Inc. (incorrectly sued as GardaWorld CashLink, LLC) (Garda CL Great Lakes, Inc. will be referred to hereafter as "Garda Great Lakes") hereby remove this action from the Circuit Court of McLean County, Illinois, Eleventh Judicial Circuit, to this Court. In support of their Notice of Removal, CashLink and Garda Great Lakes state as follows:

**I.     INTRODUCTION AND BACKGROUND**

1.     CashLink and Garda Great Lakes file this Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1332(d) (or, in the alternative, 28 U.S.C. § 1332(a)), 1441 and 1446. This Notice of Removal is being filed with this Court within 30 days of CashLink's receipt of a copy of the initial pleading setting forth the claim for relief upon which such proceeding is based, as provided by 28 U.S.C. § 1446(b).

2.     Plaintiff Chris Kalb ("Plaintiff") commenced this action against CashLink in the Circuit Court of McLean County, Illinois, Eleventh Judicial Circuit, by filing a Class Action Complaint, styled *Chris Kalb, on behalf of himself and all others similarly situated vs.*

*GardaWorld Cashlink, LLC.,* Case No. 2021L0000014 ("Complaint"). Service was effected on CashLink on February 19, 2021.

3. Because this action was brought in the Circuit Court of the Eleventh Judicial Circuit, McLean County, Illinois, venue for purposes of removal is proper in this Court under 28 U.S.C. § 93(c). *See* 28 U.S.C. § 93(b); 28 U.S.C. § 1441(a).

4. Pursuant to 28 U.S.C. § 1446(a), copies of all papers served on CashLink in the state court are attached as Exhibit A.

5. Plaintiff alleges he was employed by CashLink at a facility in Bloomington, Illinois, from approximately August 2017 through January 2019. Ex. A, Compl. ¶ 17. As shown in the declaration of Eva Parisi, Employee Relations Manager of the Bloomington facility, attached hereto, Garda CL Great Lakes, Inc. was Plaintiff's employer. See Exhibit B, ¶ 7.

6. Plaintiff's Complaint purports to assert a claim against CashLink under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). Plaintiff alleges that CashLink violated BIPA's mandates concerning collection, storage, and use of his biometric information – specifically, his fingerprints, when he clocked in or out at one of CashLink's time clocks. Ex. A, Compl. ¶¶ 1, 6, 18-24, 35-38. Plaintiff seeks statutory damages of $1,000 for each and every violation or $5,000 for each and every intentional or reckless violation on his behalf based on this claim. *Id.* ¶ 39 and p. 11, Prayer for Relief (C).

7. Plaintiff's Complaint also asserts a claim on behalf of a proposed class of individuals consisting of "[a]ll individuals who had their fingerprints collected, captured, received, or otherwise obtained, and/or stored, by Defendant in Illinois." Ex. A, Compl. ¶ 25. As to the size of the proposed class, Plaintiff alleges it "is substantial, believed to amount to at least hundreds and possibly thousands of persons." *Id.* ¶ 26. Plaintiff seeks statutory damages of $1,000 for each

and every violation or $5,000 for each and every intentional or reckless violation on behalf of the proposed class identified in his Complaint. *Id.* ¶ 39 and p. 11, Prayer for Relief (C).

## II. GROUNDS FOR REMOVAL

### A. Because Plaintiff's Claims Are Preempted By The LMRA, This Court Has Federal-Question Jurisdiction (28 U.S.C. § 1331).

7. This Court has original jurisdiction over this action because the Plaintiff's sought-after relief is preempted by Section 301 of the Labor Management Relations Act, (29 U.S.C. § 185 ("LMRA").

8. Though typically a court must examine the plaintiff's well-pleaded complaint to see if it raises an issue of federal law, the "complete preemption" doctrine provides that when Congress completely preempts a particular area of law, any complaint raising claims in that area will be considered federal in character. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987) ("One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by § 301 of the LMRA for such special treatment."); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392–93 (1987); *Douglas v. American Info. Technologies Corp.,* 877 F.2d 565, 569 (7th Cir. 1989).

9. Here, "Section 301 of the LMRA, which provides that suits for violation of contracts between an employer and a labor organization confer original jurisdiction in federal district courts, has complete preemption force." *Atchley v. Heritage Cable Vision Associates,* 101 F.3d 495, 498 (7th Cir. 1996); 29 U.S.C. § 185(a). If the resolution of a state-law claim is dependent upon an interpretation of a collective bargaining agreement, the state-law claim will be preempted by Section 301 of the LMRA. *See Baker v. Kingsley,* 387 F.3d 649, 657 (7th Cir. 2004).

10. The Seventh Circuit has held that BIPA claims, just like Plaintiff's claims here, are removable on the basis of federal-question jurisdiction. *See Miller v. Sw. Airlines Co.,* 926 F.3d 898, 903-05 (7th Cir. 2019) (holding, in the Railway Labor Act context but acknowledging application of the principle in the LMRA context, that "if a dispute necessarily entails the interpretation or administration of a collective bargaining agreement, there's no room for individual employees to sue under state law"). According to the Seventh Circuit, "there can be no doubt that how workers clock in and out is a proper subject of negotiation between unions and employers," such that the question of whether these unions "consent[ed] to the collection and use of biometric data, or perhaps grant authority through a management-rights clause" and whether the employer "may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management." *Id.* at 903. In other words, states simply "cannot bypass the mechanisms" of union bargaining to authorize direct negotiation or litigation between workers and management. *Id.* at 904. Following *Miller,* district courts within the Seventh Circuit have "consistently found that BIPA claims from unionized employees are preempted by federal labor law." *Roberson v. Maestro Consulting Servs. LLC,* No. 20-CV-00895-NJR, 2020 WL 7342693, at *9 (S.D. Ill. Dec. 14, 2020) (collecting cases, including *Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202, at *3 (N.D. Ill. Feb. 26, 2020), *Gray v. University of Chicago Medical Ctr., Inc.*, 2020 WL 1445608, at *4 (N.D. Ill. Mar. 25, 2020), and *Darty v. Columbia Rehab. & Nursing Ctr., LLC*, 468 F. Supp. 3d 992, 995 (N.D. Ill. 2020), among others).

11. Plaintiff alleges that CashLink has violated BIPA by collecting, storing and using his biometric identifiers and associated biometric information without informed written consent, and failing to provide a publicly available written policy regarding its schedule and guidelines for retention and permanent destruction of his biometric identifiers and biometric information. Ex. A,

Compl. ¶¶ 13-16. But Plaintiff was actually employed by Garda Great Lakes, and the terms and conditions of his employment were governed by a collective bargaining agreement between Garda Great Lakes and Plaintiff's collective bargaining representative effective August 1, 2011 through March 22, 2018 (the "2011 CBA") and a collective bargaining agreement effective March 23, 2018 through the end of Plaintiff's employment and beyond (the "2018 CBA"). Ex. B, Parisi Decl. ¶¶ 4-6 and Exs. 1 (2011 CBA) and 2 (2018 CBA) thereto. The CBAs contain collectively bargained provisions that govern management rights with respect to the processes, equipment, and operations of Garda (*see* Ex. 1 to Ex. B, Art. 25 and Ex. 2 to Ex. B, Art. 23) and specifically address use of the time clock (Ex. 1 to Ex. B, Art. 6(g) and Ex. 2 to Ex. B, Art. 6, §2). In addition, the CBAs contain a grievance procedure applicable to disputes arising in connection with the application, interpretation, or alleged violation of any provision of the CBA. Ex. 1 to Ex. B, Art. 5 and Ex. 2 to Ex. B, Art. 25. If the grievance procedure does not resolve the dispute, the dispute must be submitted to arbitration. *Id*.

12. Under *Miller,* resolving the issue of whether consent and notice have properly been given under BIPA necessarily requires analysis of the interpretation and administration of the Management Rights clause and other clauses of the CBAs. *See Miller,* 926 F.3d at 903-04. In other words, the Court cannot analyze Plaintiff's claims without examining the CBAs' language concerning Garda Great Lakes' rights to determine methods, procedures, and equipment, and to determine the nature of work to be performed by the employees and to implement rules and regulations. *See id.* Similarly, the analysis of whether Garda Great Lakes obtained any required releases or consents, provided notices, or otherwise violated BIPA with respect to timekeeping practices, requires a determination of whether the CBAs' specifications of Garda's right to manage and direct its workforce and determine the methods, procedures, equipment, and rules to be utilized

5

by the employees and other provisions of the CBAs constitute a sufficient written notice and release from Plaintiff's "legally authorized representative" under 740 ILCS § 14/15(b) (providing for "legally authorized representative" to receive notices and provide consent on behalf of an individual to collection, storage and use of biometric information). *See id.* As a result, Plaintiff's claims under BIPA are preempted by the LMRA, so this Court has federal-question jurisdiction over this case and removal is proper under 28 U.S.C. § 1331.

      **B.    In The Alternative, This Case Meets All The Requirements For Jurisdiction Under CAFA (28 U.S.C. § 1332(d)(2)), Or, Alternatively, 28 U.S.C. § 1332(a).**

13.    This Court also has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), which grants to the United States District Courts original jurisdiction over "any civil action" in which the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" and is a "class action" in which, among other things, "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C. § 1332(d)(2). In the alternative, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), which grants to the United States District Courts original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States[.]" *See* 28 U.S.C. § 1332(a).

14.    This case meets all the requirements for jurisdiction under CAFA. The amount in controversy exceeds $5,000,000 and at least one member of the proposed class of plaintiffs is a citizen of a state different from CashLink and Garda Great Lakes. *See* 28 U.S.C. § 1332(d)(2). Additionally, the number of members of the proposed plaintiff class is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B). Alternatively, this case also meets all the requirements for jurisdiction under § 1332(a). The amount in controversy exceeds $75,000, Plaintiff on one hand and CashLink

6

and Garda Great Lakes on the other are citizens of different states, and CashLink and Garda Great Lakes are not citizens of Illinois.

### 1. Amount In Controversy

15. There need be only "a reasonable probability that the stakes exceed" $75,000 to satisfy the amount in controversy requirement under § 1332(a) or the $5,000,000 amount in controversy requirement under CAFA in order to satisfy the amount in controversy requirement. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). The Seventh Circuit has recognized "the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011). As such, "the party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id*. (citing *Brill*, 427 F.3d at 448). This burden "is a pleading requirement, not a demand for proof." *Id*. (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)). Specifically in the BIPA context, a complaint seeking damages for "each" violation "can plausibly be read to suggest that a violation of at least some of the BIPA provisions alleged occurred every time" there was a scan of the plaintiff's biometric data. *Peatry, supra,* 393 F. Supp. 3d at 769; *Fernandez* v. *Kerry, Inc.*, No. 17 C 8971, 2020 WL 1820521, *4 (N.D. Ill. Apr. 10, 2020) (holding, in BIPA class action involving a timekeeping system in which employees use their fingerprints to "punch" in and out of work, that "[t]he law is not clear as to whether, under BIPA, a plaintiff can recover for every fingerprint scan."). The law on this issue is sufficiently unsettled that the Seventh Circuit recently permitted an interlocutory appeal under 28 U.S.C. §1292(b) on the question of whether an entity violates BIPA only when it first collects an individual's biometric information or whether a violation occurs each time an entity collects or

7

discloses the biometric data in violation of BIPA. *In Re: White Castle Sys., Inc.*, No. 20-8029, Dkt. 9 (7th Cir. Nov. 9, 2020) (*Cothron v. White Castle Sys., Inc.,* No. 19-cv-00382, Dkt. 141 (N.D. Ill. Oct. 1, 2020)). Section 1292(b) permits a court of appeals, in its discretion, to grant an interlocutory appeal from an order that "involves a controlling question of law *as to which there is substantial ground for difference of opinion* and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b) (emphasis added); *Ahrenholz v. Bd. of Trs. of Univ. of Ill.,* 219 F.3d 674, 675 (7th Cir. 2000) (test for whether to permit an appeal under §1292(b) is that "there must be a question of law, it must be controlling, *it must be contestable*, and its resolution must promise to speed up the litigation.") (emphasis added). Accordingly, at this stage, recovery on a per-punch basis, although uncertain, remains plausible for purposes of determining the amount of the claim.

16. Plaintiff's Complaint seeks damages on behalf of Plaintiff during his employment with CashLink or Garda Great Lakes, and on behalf of a proposed class of current and former employees in Illinois over an indefinite period of time. Ex. A, Compl. ¶¶ 1, 25. While CashLink and Garda Great Lakes deny any liability of any kind in this action, the proposed class, as defined by Plaintiff in his Complaint, could consist of hundreds, if not thousands, of current and former employees who are or were working for the company in Illinois. While the Complaint does not specify a damages figure, it is apparent that the aggregated claims of the putative class plausibly exceed CAFA's jurisdictional minimum. In addition, it is plausible that Plaintiff's claim, by itself, exceeds the individual $75,000 threshold. *See* 28 U.S.C. § 1332(d)(2).

17. Inasmuch as the Complaint seeks "$1,000 for each and every violation pursuant to 740 ILCS 14/20(1)" or "$5,000 for each and every violation of BIPA to the extent committed intentionally or recklessly pursuant 740 ILCS 14/20(2)" (Ex. A, Compl. ¶ 39 and p. 11, Prayer for

8

Relief (C)), it is plausible that Plaintiff seeks to recover $5,000 in damages for each time, over the course of approximately one and half years as alleged, that he was "required to place his finger on a fingerprint scanner […] each time he attempted to clock in and clock out of work at the Bloomington Facility." Ex. A, Compl. ¶ 19. Accordingly, based purely on the Complaint's allegations, if Plaintiff clocked in or out using the fingerprint scanning process a mere 16 times over the course of 1.5 years as alleged, it is plausible that he seeks to recover damages in excess of $75,000 (16 x $5,000=$80,000).[1]

18. Applying this same damages theory to the putative class would well exceed the jurisdictional threshold under CAFA. Plaintiff alleges that each class member is entitled to recover up to $5,000 individually for each time he or she clocked in or out using the fingerprint scanning process. Ex. A, Compl. ¶ 39 and p. 11, Prayer for Relief (C). Even assuming there are only 200 class members (a number far lower than suggested by Plaintiff's Complaint (*see* Compl. ¶ 26)), an average of just six fingerprint scans each would put the class claim over $5,000,000 in the aggregate (6 x $5,000 x 200=$6,000,000), thus satisfying the CAFA amount in controversy requirement.

19. Additionally, Plaintiff seeks "injunctive and other equitable relief as is necessary to protect the interests of the Class[.]" Ex. A, Compl. ¶ 39 and p. 11, Prayer for Relief (D). CashLink and Garda Great Lakes dispute that they have violated BIPA and that any injunctive relief is appropriate. However, strictly for removal purposes and based on Plaintiff's allegations, the costs of Plaintiff's individual claim for injunctive relief itself could exceed $75,000. "[T]he cost a defendant incurs in complying with injunctive relief is a legitimate consideration in a

---

[1] Garda's records show that Plaintiff actually was employed from December 14, 2017 through December 14, 2018 (Parisi Decl. ¶ 4), but the discrepancy between the dates of employment alleged in the Complaint and Garda's records do not affect whether the damage claims meet the minimum amounts required for individual diversity jurisdiction or CAFA jurisdiction.

jurisdiction inquiry." *Tropp v. W.-S. Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004) (holding diversity jurisdiction exists where "the costs of implementing the injunctive relief requested by [plaintiff] in the original complaint would exceed $75,000").

    **2.**    **Diversity Of Citizenship**

20. Plaintiff is a citizen and resident of Illinois. Ex. A, Compl. ¶ 7.

21. Plaintiff seeks to certify a class. Plaintiff himself is a class member and as noted is an Illinois citizen. It is likely that the majority of proposed class members, who consist of current and former employees of CashLink or Garda Great Lakes in Illinois, are also Illinois citizens or at least are not citizens of Delaware, Florida, or Ohio, the states where CashLink and Garda Great Lakes are citizens. *Id.*, at ¶ 8.

22. GardaWorld CashLink LLC is a limited liability company formed in the State of Delaware. Decl. of Jeffrey Schiavino, Controller of Garda USA, Inc. (attached hereto as Exhibit C) ¶ 3. CashLink's single member is GardaWorld Cash Services, Inc., which is a Delaware corporation with its headquarters and principal place of business in Boca Raton, Florida. *Id.* CashLink is thus a citizen of Delaware and Florida. Garda CL Great Lakes, Inc. is an Ohio corporation headquartered in Boca Raton, Florida, with its principal place of business in Boca Raton, Florida. Ex. C, Schiavino Decl. ¶ 5. Garda Great Lakes is thus a citizen of Ohio and Florida.

23. Diversity jurisdiction therefore exists in this action pursuant to 28 U.S.C. § 1332(a) and (d)(2).

    **3.**    **Size Of Proposed Class**

24. The proposed class is "at least hundreds and possibly thousands of persons" (*see* Ex. A, Compl. ¶ 26), and therefore exceeds 100 members as required by CAFA. *See* 28 U.S.C. § 1332(d)(5)(b).

### III.     CONCLUSION

25. Based upon the foregoing, all requirements for removal to this Court on the basis of federal question jurisdiction, CAFA, and complete diversity jurisdiction have been met.

WHEREFORE, Defendant GardaWorld CashLink LLC and Garda CL Great Lakes, Inc. (incorrectly sued as GardaWorld CashLink LLC) hereby remove this action to this Court.

Dated: March 16, 2021

Respectfully submitted,

GARDAWORLD CASHLINK, LLC, Defendant, and GARDA CL GREAT LAKES, INC. (incorrectly sued as GardaWorld CashLink LLC)

By:   /s/ Phillip M. Schreiber
         One of Its Attorneys

Mark L. Shapiro (ARDC #2566753) (motion for reciprocal admission forthcoming)
Phillip M. Schreiber (ARDC #209973)
Kelly D. DeWitt (ARDC #6272902) (motion for reciprocal admission forthcoming)
Holland & Knight LLP
150 N. Riverside Plaza, Ste. 2700
Chicago, Illinois 60606
312-263-3600
312-578-6666 (facsimile)
mark.shapiro@hklaw.com
phillip.schreiber@hklaw.com
kelly.dewitt@hklaw.com

**CERTIFICATE OF SERVICE**

  The undersigned counsel certifies that March 16, 2021, a true copy of the foregoing Notice of Removal was served via electronic mail on the following counsel of record:

   Carl V. Malmstrom
   Wolf Haldenstein Adler Freeman & Herz LLC
   111 W. Jackson Blvd., Ste. 1700
   Chicago, IL 60604
   malmstrom@whafh.com

   Frank S. Hedin
   David W. Hall
   Hedin Hall LLP
   1395 Brickell Avenue, Ste. 1140
   Miami, Florida 33131
   fhedin@hedinhall.com
   dhall@hedinhall.com

   Attorneys *for Plaintiff*

                /s/Phillip M. Schreiber